SO ORDERED.

SIGNED this 15th day of January, 2014.



_____
Dale L. Somers
United States Bankruptcy Judge
_____

Designated for on-line use but not for print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: WILLIAM MCKEAN and MARIANNE MCKEAN,<br><br>DEBTORS. | CASE NO. 11-23743<br>CHAPTER 7 |
| BRIAN D'ANGELO, as Administrator C.T.A. of the Estate of Verona A. McKean, deceased,<br><br>PLAINTIFF,<br><br>v.<br><br>WILLIAM MCKEAN and MARIANNE MCKEAN,<br><br>DEFENDANTS. | ADV. NO. 12-6018 |

# MEMORANDUM OPINION AND ORDER
# GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
# SUMMARY JUDGMENT

In this adversary proceeding, the Plaintiff, the Administrator C.T.A. of the Estate Verona A. McKean, seeks an order excepting from discharge a state court judgment entered in favor of the estate against Defendant William McKean and an order denying discharge to Defendants William McKean and Marianne McKean (collectively Debtors). Plaintiff moves for summary judgment, and the Debtors oppose the motion.

**FINDINGS OF UNCONTROVERTED FACTS.**

Debtor William McKean is the son of Verona A. McKean and the brother of Karen D'Angelo, who was formerly the executrix of the Estate of Verona A. McKean. William McKean was an attorney in fact for Verona McKean under a 1994 Missouri Durable Power of Attorney. Verona McKean owned two assets relevant to this case, a World Savings CD and her home in St. Louis, Missouri. In April 2006, William McKean liquidated the CD and deposited the proceeds of $83,598.62 into the bank account for William McKean's business, Creative Crafts & Hobbies, LLC. In June 2006, William McKean sold Verona McKean's home for $156,921.17 and deposited the funds into Debtors' checking account. The funds in both accounts were used for William McKean's own purposes.

Verona McKean died testate on October 2, 2007, and Karen D'Angelo was appointed executrix of Verona McKean's estate. She requested William McKean to pay

2

Verona McKean's money to the estate, but William McKean did not do so.[1] Instead he made gifts to the grandchildren of Verona McKean[2] and attempted to have Karen D'Angelo accept $24,000 as her share of her mother's assets.

In August 2008, Karen D'Angelo, as executrix of the Estate of Verona D'Angelo, brought suit against William McKean in Johnson Country, Kansas District Court. It was tried on June 20 through June 22, 2011. Four claims were submitted to the jury: (1) conversion of assets of Verona McKean; (2) failure to promptly deliver funds belonging to Verona McKean to the executrix of her estate; (3) making unauthorized gifts of Verona McKean's property; and (4) breach of fiduciary duty. The jury instructions included several which are relevant to this case. Instruction 11 provided, "Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal property belonging to another to the exclusion of the other's rights,"[3] and Instruction 12 stated, "Conversion may be found to have occurred where money placed into the custody of a person for a particular purpose is dispersed contrary to the express instruction of the owner."[4] The jury was also instructed that "an Attorney in Fact under a Durable Power of Attorney has a statutory duty, upon the death of the principal, to promptly deliver to and

---

[1] The Johnson County District Court's Findings of Fact include the finding that William McKean paid $10,370.86 to the estate in May 2008.

[2] It is not clear whether these "gifts" were accepted.

[3] Dkt. 43-6, at 13.

[4] *Id.* at 14.

put in the possession and control of the principal's personal representative or successors any property of the principal,"[5] that "[a]n Attorney in Fact under a Durable Power of Attorney may make a gift of the principal's property only if such action expressly authorized in the Power of Attorney,"[6] but that the Durable Power of Attorney at issue in this case did not provide such authority. The Court also instructed the jury that the court "has found as a matter of law that a fiduciary relationship existed between Verona A. McKean and William A. McKean."[7] It defined that relationship as referring to "any relationship of blood, business, friendship or association in which one of the parties places special trust and confidence in the other."[8]

The jury found in favor of the plaintiff on all four counts and awarded actual damages of $172,912.23,[9] which the trial court in its conclusions of law referred to as the "profit [to William McKean] . . . properly established by the jury."[10] The jury also found

---

[5] *Id*. at 15.

[6] *Id*. at 16.

[7] *Id*. at 17.

[8] *Id*.

[9] Trial exhibit 15 (dkt. 60-16, 76) is an accounting offered by William McKean which shows that the amount of Verona A. McKean's property which Debtor should have had on the date of her death was $177,556.26. The accounting shows receipt of $276,070.11, comprised of the funds from the CD, the house, and other income. When expenses of $98,513.85 paid by William McKean for the benefit of Verona McKean, plus gifts of $10,000 to grandchildren are subtracted from the income, the balance is $177,556.26. The record is not sufficient for this Court to verify the jury's damage computation; but because, as found below this jury finding is entitled to collateral estoppel effect, it is not necessary for the Court to do so.

[10] Dkt. 43-1, at 16.

4

that defendant acted in bad faith, and that punitive damages should be assessed against the defendant, after being instructed that such damages required "clear and convincing evidence that defendant acted in a willful or wanton manner toward plaintiff."[11] In addition to the $172,912.23 in actual damages as determined by the jury, the court awarded $259,368.34 in punitive damages, $94,753.94 in attorney fees, and $3,367.31 in expenses, for a total judgment of $530,401.82. The judgment was entered on October 14, 2011 (hereafter Judgment).

The Findings of Fact and Conclusions of Law entered by the Johnson County District Court when ruling on the claim for punitive damages and attorney fees, made numerous findings concerning the nature of William McKean's conduct, including the following.

> In July of 2006, defendant wrote a letter to Karen D'Angelo in which he told her that all of Verona McKean's money . . . had been placed into "liquid investments paying her 6%."
> In January of 2008 defendant wrote a letter to Karen D'Angelo [and others] contending that Verona McKean was "broke" at the time of her death but promising to make some payments to them out of defendant's own funds.
> Concerned by the apparent discrepancy between the July 2006 letter and the January 2008 letter, Karen D'Angelo retained counsel and via a January 21, 2008 letter, asked defendant to sit down and discuss the situation. . . .
> Defendant's response to this simple request . . . was inexplicably hostile.
> During the first several months of 2008 Karen D'Angelo, through her counsel, repeatedly asked defendant to

---

[11] Dkt. 43-6, at 19.

safeguard whatever portion of Verona McKean's money remained and not to make any gifts with such funds, and to instead give an accounting and pay the money into Verona McKean's estate.

Defendant ignored these requests making unauthorized gifts of $10,706.14 to the grandchildren of Verona McKean and attempting to have Karen D'Angelo accept $24,000.00 as her share of their mother's assets.

Karen D'Angelo, was appointed Executrix of the Estate of Verona McKean on May 1, 2008. A fact which defendant was well aware.

Karen D'Angelo, through counsel, made it perfectly clear to defendant why she would not accept the $24,000.00 distribution and why it was incumbent upon defendant to pay all remaining assets of Verona McKean into the estate.

The nature of defendant's conduct was further evidenced by the fact that he created, in his own handwriting, false records suggesting distributions totaling $48,000 had been made to Karen D'Angelo and her husband in 2006 and 2007 when in fact no such distributions occurred.

Defendant clearly understood that he was being asked to pay the money in question into the estate and knew exactly how to do so, as evidenced by the fact that he made a payment of $10,370.86 to the estate in May of 2008.

Karen D'Angelo, in her role as Executrix, initiated this lawsuit in August of 2008.

Defendant clearly admits that at some point after the lawsuit was filed up and through January of 2011, he spent the remaining portion of Verona McKean's money for his own benefit despite having promised his mother that he would see to it that money was distributed consistent with her Will. And despite this fact that he himself believed he had a duty to turn the money over to the Estate of Verona McKean.

Defendant attempted to partially justify his conduct by alleging that while he was transferring money from the CD and home sale to his personal and business accounts he was simultaneously setting money aside in various safes in order to safeguard it for his mother and her heirs. Defendant's testimony in this regard was conclusory, self-serving and

inconsistent. . . .[12]

The Johnson County District Court's conclusions of law include the following:

> At the time of defendant's misconduct there was a substantial likelihood that harm would arise as a result, and he was clearly aware of that likelihood. . . .
> The defendant's conduct was obviously profitable to him. Indeed, given the nature of the case it is apparent that he acted with the specific intent to create a financial benefit to himself at the expense of his relatives, including the children of his deceased brother. The amount of the profit has been properly established by the jury in its award of actual damages of $172,912.23.[13]

Debtors filed their petition under Chapter 7 on December 7, 2011. Their initial Statement of Financial Affairs reported in response to question 1, income from employment or operating of business, negative income for years 2009 and 2010 for both Debtors of approximately $385,000 from Creative Crafts and Hobbies, LLC and for year 2011 gross income to date of $26,823.09 for Marianne McKean from MJM Services, LLC.[14] An amended Statement of Financial Affairs reported the same income, with the exception of also reporting $0.00 income for William McKean in 2011.[15] On both statements, question 2, asking for income other than from employment or operation of a

---

[12] Dkt. 43-1, at 2-5.

[13] *Id.*, at 15-16.

[14] Dkt. 43-10, at 17.

[15] Dkt. 43-12, at 1-2.

7

business, social security income for both Debtors is reported.[16]

Debtors original Schedule I, filed on December 7, 2011, lists the regular income from operation of business, stated to be MJM Services, LLC, which employed Marianne McKean, to be $485 per month, and Schedule J lists the regular expense for operation of MJM Services, LLC as $13,412.00 per month.[17] Debtors' amended Schedule I, filed on August 30, 2012, lists the regular income from operation of business as $485 and Amended Schedule J lists the regular expense for operation of MJM Services as $0.00.[18] Debtors' 2011 federal income tax return reports net profit from MJM Services, LLC of $19,583 and gross receipts of $38,223 for the entire tax year.[19]

**DISCUSSION.**

**A. EXCEPTION FROM DISCHARGE OF THE JOHNSON COUNTY JUDGMENT UNDER § 523.**

**1. Collateral estoppel.**

Plaintiff relies upon the doctrine of collateral estoppel and the findings in the Johnson County Litigation when moving for summary judgment on the claims for exception to discharge of its Judgment against William McKean under § 523(a)(4) and (a)(6). The doctrine of collateral estoppel (issue preclusion) applies in discharge

---

[16] Dkt. 43-10, at 17; Dkt. 43-12, at 1-2.

[17] Dkt. 43-11, at 10,14.

[18] Dkt. 43-12, at 1-2.

[19] Dkt. 43-15, at 5, 14.

8

litigation under § 523.[20]  It "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit."[21]  When the issue previously litigated was heard in state court, the bankruptcy court applies the law of collateral estoppel of the relevant state.[22]  In Kansas, collateral estoppel operates to preclude the relitigation of issues that were actually decided in a prior proceeding.[23]  The elements of collateral estoppel stated by the Kansas Supreme Court are: "(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts . . .; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment."[24]

In this case, two of the elements of collateral estoppel which relate to the characteristics of the prior litigation are satisfied.  There was a prior judgment on the merits which determined the right and liabilities of the parties.  The parties are identical.  The question presented is whether the issues required for exceptions to discharge were determined and necessary to support the Judgment.

**2. The uncontroverted facts do not establish the elements required for exception of the Judgment against William McKean from discharge under §**

---

[20] *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991).

[21] *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).

[22] 4 *Collier on Bankruptcy* ¶ 523.06 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2013).

[23] *Tilzer v. Davis, Bethune & Jones, L.L.C.*, 288 Kan. 477, 487, 204 P.3d 617, 624 (2009).

[24] *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284, 1290 (2002) (quoting *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256, 265 (1999)).

**523(a)(4).**

Section 523(a)(4) excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiffs rely upon the fiduciary relationship portion of the exception. "The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law, . . . [h]owever, state law is relevant to this inquiry."[25] "For purposes of section 523(a)(4), the definition of 'fiduciary' is narrowly construed, meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property."[26] "[A]n express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)."[27] Therefore, not all fiduciary relationships which exist under common law or state law rise to the level actionable under § 523(a)(4).

In this case, the Plaintiff relies upon the Johnson County District Court's finding of a fiduciary relationship between Verona McKean and William McKean. The jury instruction defined that relationship as being based upon "blood, business, friendship or association in which one of the parties places trust and confidence in another." The Court finds this insufficient to meet the federal requirement of an express or technical trust.

The jury was not instructed that there was an express trust. The Durable Power of Attorney is the only relevant document between Verona McKean and William McKean

---

[25] *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

[26] 4 *Collier on Bankruptcy*, ¶ 523.10[1][d] at 523-73.

[27] *In re Young*, 91 F.3d at 1371.

10

referred to in the Johnson County District Court litigation.  But "as a general rule, the general fiduciary relationship created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4)."[28]  There is an exception where the fiduciary duty is elevated, such as when "one party to a fiduciary relationship is incapable of monitoring the other's behavior."[29]  There are no findings by the Johnson County Court indicating circumstances of an elevated duty under the Power of Attorney.

A technical trust relationship is one "created by statute or common law doctrines that impose trust-like obligations on a party sufficient to render the debtor a fiduciary" for purposes of § 523(a)(4).  "A technical trust differs from an express trust in that the intention of the parties is not relevant, and the parties' fiduciary obligations are imposed by law, not implied by law."[30]  Examples of statutes giving rise to technical trusts are the New Mexico contractor licensing statute,[31] the Colorado Mechanic's Lien Trust Fund statute,[32] and ERISA.[33]  Plaintiff points to nothing similar which would give rise to a technical trust under the facts of this case.

---

[28] *Allen v. Scott (In re Scott)*, 481 B.R. 119, 192 (Bankr. N.D. Ala. 2012); Bast v. Johnson (In re Johnson), 174 B.R. 537, 541 (Bankr. W.D. Mo. 1994).

[29] *Id*.

[30] *Jenkins v. IBD, Inc.*, 489 B.R. at 598.

[31]  *Crossingham Trust v. Baines (In re Baines)*, 528 F.3d 806, 808 (10th Cir. 2008),

[32]  *Fowler & Berth v. Regan (In re Regan)*, 477 F.3d 1209,1211 n.1 (10th Cir. 2007).

[33] *Navarre v. Luna (In re Luna)*, 406 F.3d 1192,1198 n.2 (10th Cir. 2005).

11

Summary judgment must be denied on the § 523(a)(4) claim for exception to discharge for claims arising from fraud of defalcation while acting in a fiduciary capacity. The Johnson County District Court's finding of a fiduciary relationship between Verona McKean and William McKean is not entitled to collateral estoppel effect, since it was based on state law, there was no express trust agreement, and Plaintiff provides no basis for a finding of a technical trust.

**3. The uncontroverted facts establish the elements required for the exception of the Judgment against William McKean from discharge under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts "for a willful and malicious injury by the debtor to another or to the property of another." This exception covers willful and malicious conversion.[34] An injury is malicious within this exception "if it was wrongful and without just cause or excuse."[35] Malicious conduct is more culpable than recklessness.[36] Willfulness refers to a deliberate and intentional act that necessarily leads to injury.[37]

In the Johnson County litigation, the jury found that William McKean converted Verona McKean's property and awarded actual damages of $172,912.23. The finding of conversion was necessary to the jury verdict. It is entitled to collateral estoppel effect.

---

[34] 4 *Collier on Bankruptcy* ¶523.12[1] at 523-91.

[35] 4 *Collier on Bankruptcy,* ¶523.12[2] at 523-92.

[36] *Id*. at 523-93, citing *In re Long*, 774 F.2d 875, 881 (8th Cir. 1985).

[37] *Id*., citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 365 (1977).

12

In addition to a conversion, the exception for discharge requires that the tort be willful and malicious, not merely negligent. The Johnson County District Court made findings of fact and conclusions of law necessary to support its imposition of punitive damage. These findings, quoted above in the findings of fact, establish the elements of willful and malicious injury.

Willfulness refers to a deliberate and intentional act that necessarily leads to injury. The Johnson County court found William McKean clearly understood that he was being asked to pay the money in question into the estate and knew exactly how to do so, that William McKean admitted that at some point after the Johnson County lawsuit was filed up and through January of 2011, he spent the remaining portion of Verona McKean's money for his own benefit despite having promised his mother that he would see to it that money was distributed consistent with her will, and that at the time of William McKean's misconduct there was a substantial likelihood that harm would arise as a result and he was clearly aware of that likelihood.

The exception to discharge also requires that the conduct be malicious, meaning that it was wrongful and without just cause or excuse. The Johnson County District Court found that William McKean was fully aware of his duty to turn Verona McKean's assets over to her estate, but with such knowledge acted intentionally for his own benefit at the expense of his relatives.

The Court finds that Plaintiff is entitled to summary judgment on the claim of

13

exception of the Judgment[38] from discharge under § 523(a)(6).

### B. DENIAL OF DISCHARGE UNDER § 727.

**1. The uncontroverted facts do not establish the elements required for denial of discharge of William McKean and Marianne McKean under §727(a)(3).**

Section 727(a)(3) provides that a debtor shall be granted a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." "The purpose of the objection is to ensure documentation to permit an objective determination of the debtor's true financial status."[39] "[A] prima facie case under Code § 727(a)(3) may be made upon showing that (1) the debtor failed to maintain and preserve adequate records, and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[40]

In this case, Plaintiff contends that both Debtors should be denied a discharge because they failed to keep records from which Debtor's financial condition involving the

---

[38] As stated above, the Judgment is comprised of the jury verdict of $172,912.23 and the award of $259,368.34 in punitive damages, $94,753.94 in attorney fees, and $3,367.31 in expenses, for a total Judgment of $530,401.82. The Debtors make no argument that any portion of this Judgment should not be included in the amount excepted from discharge.

[39] 4 William L. Norton, Jr. and William L. Norton III, *Bankruptcy Law & Practice 3d*, § 86:9 at 86-29 to 86-30 (Thomson Reuters/West 2013).

[40] *Id*. at 86-29.

14

funds received from Verona McKean in 2006 can be ascertained. As stated above, it is uncontroverted that the proceeds from the sale of property of Verona McKean were deposited into the Creative Crafts & Hobbies, LLC account and the Debtors' personal checking account. The money was not turned over to the estate. The Johnson County District Court found that William McKean "had no recollection of what he spent the money on, other than $5,000 paid to his attorneys."[41]

The Court finds these facts insufficient for denial of discharge. The lack of records makes it impossible to determine exactly how the money received from Verona McKean was spent. But this failure does not make it impossible to ascertain the Debtors' financial condition or their material business transactions.

**2. The uncontroverted facts do not establish the elements required for denial of discharge of William McKean and Marianne McKean under §727(a)(4).**

Section 727(a)(4)(A) provides that a debtor shall be granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or statement." A false statement or omission in a debtor's schedules may be sufficient for denial of discharge.[42] One commentator summarizes the applicable law as follows:

> Under current Official Bankruptcy Forms, the debtor is required to verify the completeness and accuracy of any schedule of assets, debts, or affairs filed in a case. However, since the failure to list an asset must be both knowing and

---

[41] Dkt. 43-1, at 7.

[42] 6 *Collier on Bankruptcy*, ¶727.04[c] at 727-38.

15

fraudulent, mere inadvertence is not sufficient to establish an objection. Where there is a knowing failure to list a substantial asset, an inference of fraudulent intent may be drawn in the absence of mitigating circumstances. The failure to amend schedules to include omitted information concerning assets is a reckless indifference to the truth, which is equivalent to fraud.

> The false oath or account must relate to a material matter. The failure to list a significant asset is the most frequently established basis for denying discharge under this section, and certainly satisfies the materiality element. Materiality under Code § 727(a)(4)(A) means that the statement must bear a relationship to the debtor's financial transactions or to the bankruptcy estate, concern the disclosure of assets, or relate to the disposition of assets. If there is a failure to list a valuable asset, materiality is established.[43]

Plaintiff relies upon two circumstances when arguing that discharge should be denied under § 723(a)(4). First, Plaintiff relies on Debtors' failure to list income derived from the conversion of money and property from Verona McKean or her estate in response to question 2 of on their Statement of Financial Affairs. That question requires the statement of "income *received* other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of the this case," or from December 7, 2009 through December 11, 2011. Relying on the Johnson County District Court findings, Plaintiff argues that Debtors had been using assets converted from Verona McKean's estate up through January 2011, yet none of the income was reported in response to question 2. But this position completely

---

[43] 4 *Norton Bankruptcy Law & Practice*, ¶ 86:11 at 86-33 to 86-34.

ignores the uncontroverted fact that the assets were received in 2006, for more than two years prior to the filing of Debtors' bankruptcy petition. Question 2 requires the statement of income *received* during the two years, not the statement of funds used during that period.[44]

As the second rationale for denial of discharge under § 723(a)(4), Plaintiff alleges that Debtors falsely reported income and expenses from MJM Services, LLC on their schedules. They rely upon the discrepancies between the initial and amended Schedules I and J, which were filed after Debtors changed counsel. The filing of amended schedules to correct errors in schedules is encouraged. The initial and amended versions need not be consistent, and inconsistencies are not a basis to deny discharge. To the contrary, the filing of amended schedules usually reflects the debtor's commitment to accuracy and truthful disclosure. Also, Plaintiff's reliance on possible discrepancies between Debtors' 2011 tax returns and the income and expenses of MJM Services, LLC reported on the schedules is erroneous; the two documents cover different periods of time. In addition, the error, if any, in reporting the automobile leasing expense as a business rather than personal expense is not material.

Further, the uncontroverted facts include nothing from which the Court could determine that any errors in Debtors' schedules were made knowingly and fraudulently or

---

[44] Since there is no evidence that the funds received from Verona McKean were held in a segregated account, it is not accurate to state that Debtors used the funds during the two years prior to filing. They used their commingled assets at that time to attempt to deal with the fact that they had received the funds which should have been turned over to the estate.

inadvertently.

**3. The uncontroverted facts do not establish the elements required for denial of discharge of William McKean and Marianne McKean under § 727(a)(5).**

Section 727(a)(5) provides that the court shall grant the debtor a discharge, unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Under this section, the objecting party has the initial burden to show "that the debtor at one time owned substantial and identifiable assets that are no longer available to his creditors."[45] The burden then falls on the debtor to satisfactory explain the unavailability of those assets.[46] "A satisfactory explanation has not been definitively defined, but the debtor probably must explain the losses or deficiencies in such a manner as to convince the court of good faith and businesslike conduct. However, lack of wisdom in the debtor's expenditures, by itself, is not grounds for denial of discharge."[47]

In this case, Plaintiff relies upon the unavailability of the assets received from Verona McKean in 2006 as the basis for the requested denial of discharge. But under Plaintiff's theory of this case, those assets were never the Debtors' own property. If they had been preserved and were identifiable, Plaintiff would undoubtedly claim them as property belonging to the Verona McKean's estate, rather than being assets available to

---

[45] *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill 2004).

[46] *Id*. at 740-41.

[47] 6 *Collier on Bankruptcy* ¶727.08 at 727-45.

satisfy Debtors' creditors. Failure to explain the details of the use of funds entrusted to Debtors by Verona McKean is not a proper basis for denial of discharge under § 727(a)(5).

Even assuming that the funds received from Verona McKean qualify as assets for purposes of § 727(a)(5), Debtor has not had an opportunity to explain the loss. The matters at issue in the Johnson County District Court did not require a satisfactory explanation of the use of the property.

**CONCLUSION.**

The Court grants the Plaintiff summary judgment on the claim to except the Judgment against William McKean from discharge under § 523(a)(6). The motion for summary judgment is denied as to the claim for exception of the Judgment against William McKean from discharge under §§ 523(a)(4) and for denial of discharge of William McKean and Marianne McKean under §§ 727(a)(3), (a)(4), and (a)(5).

**IT IS SO ORDERED.**

###